IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER ADAM PHANPRADITH, #A1069589, | CIVIL NO. 21-00293 LEK-RT |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| vs. | |
| ERIN LOREDO, *et al.*, | |
| Defendants. | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is pro se Plaintiff Christopher Adam Phanpradith's ("Phanpradith") first amended prisoner civil rights complaint ("FAC") brought pursuant to 42 U.S.C. § 1983.  ECF No. 7.  Phanpradith alleges that (1) Inmate Grievance Specialist Erin Loredo ("Loredo") violated his First Amendment rights by retaliating against him for submitting an incident report and grievances, *id.* at 7, and (2) Watch Commander Mary Keala ("Keala") violated his rights under the Fourteenth Amendment by denying him due process during a February 25, 2021

misconduct hearing, *id.* at 8–9.[1]  The Court has screened the FAC pursuant to

28 U.S.C. §§ 1915(e) and 1915A(a), and finds that it states a First Amendment

retaliation claim for relief against Loredo in her individual capacity.  Phanpradith's

other claims are DISMISSED, as specified below.

## I. <u>STATUTORY SCREENING</u>

The Court must conduct a pre-Answer screening of any case in which a

prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity, or in which a plaintiff proceeds in forma pauperis.  28 U.S.C.

§§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other

reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial

screening of prisoner complaints.").  During this screening, the Court must dismiss

any complaint, or any portion thereof, that is frivolous, malicious, fails to state a

claim on which relief may be granted, or seeks damages from defendants who are

immune from suit.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Harris v.*

*Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d

---

[1] According to Phanpradith, Keala works at the Kulani Correctional Facility
("KCF").  ECF No. 7 at 2.  Phanpradith is currently incarcerated at the Halawa
Correctional Facility ("HCF").  *See* VINE,
https://www.vinelink.com/classic/#/home/site/50000 (select "Find an Offender";
then enter "Phanpradith" in "Last Name" field and "Christopher" in "First Name"
field") (last visited Oct. 18, 2021).

670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12"). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).  "[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Hamilton v. Brown*, 630 F.3d 889, 892–93 (9th Cir. 2011) (quotation marks and citation omitted).  Courts also have an "obligation where the [plaintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Byrd*, 885 F.3d at 642 (quotation marks and citation omitted).

## II.  **PHANPRADITH'S CLAIMS**[2]

In January 2021, Loredo "confronted" and "mistreated" Phanpradith after he filed Grievance 249663.  ECF No. 7 at 7.  According to Phanpradith, Loredo had wanted to deny Grievance 249663, but a "[h]igher [a]uthority" allowed it to proceed.  *Id.*  Phanpradith submitted a "personal incident report" to the Chief of Security complaining about Loredo's conduct.  *Id.*  Phanpradith attempted to follow up on Grievance 249663 by submitting Grievance 247128 on January 18, 2021, and Grievance 249665 on February 10, 2021.  *Id.*  Loredo denied each of these additional grievances.  *Id.*

On February 16, 2021, Phanpradith was placed in isolation because of a "false misconduct report" submitted by Loredo.  *Id.*  In the report, Loredo claimed that Phanpradith "made threats of bodily harm toward her person or property" and harassed her.  *Id.*  Phanpradith denies doing any of these things.  *Id.*  Phanpradith alleges that Loredo submitted the false disciplinary report in retaliation for the "incident report and grievances" he had submitted.  *Id.*

Phanpradith attended a February 25, 2021 misconduct hearing based on Loredo's "false misconduct report."  *Id.* at 8.  Phanpradith alleges that Keala, who

---

[2] Phanpradith's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

4

was the chairperson of the committee presiding over the hearing, denied him a fair hearing. *Id.* According to Phanpradith, Keala did not allow him "to interview or question the person who wrote the misconduct report,"[3] and she did not give him "a chance to present evidence or plead his case." *Id.* After the hearing, Phanpradith was "sanctioned to 30 days of isolation and his custody level was raised." *Id.* at 7.

Phanpradith seeks $15,000 in punitive damages from each Defendant, $10,000 from each Defendant for "mental and emotional distress," unspecified compensatory damages, and costs and fees. *Id.* at 11.

## III.  DISCUSSION

### A.    Legal Framework for Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper*

---

[3] Based on the allegations in Count I, it appears that Phanpradith wanted to interview or question Loredo.

*v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)).  "'A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

## B.  Eleventh Amendment

Phanpradith names Loredo and Keala in both their official and individual capacities.  ECF No. 7 at 3.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages

6

against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Phanpradith's claims for money damages against Loredo and Keala in their official capacities are barred by the Eleventh Amendment and therefore DISMISSED with prejudice. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").

## C.  First Amendment

Phanpradith alleges in Count I that Loredo retaliated against him for submitting an "incident report and grievances" by "filing a false disciplinary report claiming that [Phanpradith] made threats of bodily harm toward her person or property" and harassed her.  ECF No. 7 at 7.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *see also Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) ("We have long recognized that a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct.").  A viable First Amendment retaliation claim in the prison context requires:  (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action;

(4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

According to Phanpradith, Loredo "confronted" and "mistreated" him after he submitted Grievance 249663. ECF No. 7 at 7. Phanpradith submitted a "personal incident report" to the Chief of Security complaining about Loredo's conduct. *Id.* On February 16, 2021, Phanpradith was placed in isolation because of a "false misconduct report" submitted by Loredo. *Id.* In the report, Loredo claimed that Phanpradith "made threats of bodily harm toward her person or property" and harassed her. *Id.* Phanpradith denies doing any of these things. *Id.* Phanpradith alleges that Loredo submitted the false disciplinary report in retaliation for the "incident report and grievances" he had submitted. *Id.* Loredo's disciplinary report was the basis for a February 25, 2021 misconduct hearing. *Id.* at 5. At the conclusion of that hearing, Phanpradith was "sanctioned with 30 days of isolation and his custody level was raised." *Id.* Phanpradith states that he has not exhausted Grievance 24963 out of a fear of further retaliation. *Id.* at 4. Phanpradith plausibly alleges a retaliation claim against Loredo that may proceed.

## D. Fourteenth Amendment

Phanpradith alleges in Count II that Keala violated his due process rights during a February 25, 2021 misconduct hearing by denying him a fair hearing. ECF No. 7 at 8–9.

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)) (brackets in original).

Protected liberty or property interests may arise under the Due Process Clause itself or state law. *See Meachum v. Fano*, 427 U.S. 215, 223–27 (1976). "In the prison context, these interests are generally ones pertaining to liberty." *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1075 (S.D. Cal. 2007). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state

9

law.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) ("We conclude that a convicted felon also is entitled to the benefit of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital."), and *Washington v. Harper*, 494 U.S. 210, 221–22 (1990) ("[R]espondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.")).  Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance."  *Sandin*, 515 U.S. at 477-87.  An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence."  *Id.* at 484, 487.

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation.  *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)).  "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken."  *Id.*  These procedural

protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:  "(1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Phanpradith does not allege sufficient facts to show that any deprivations he experienced because of the February 25, 2021 misconduct hearing imposed the type of "atypical and significant hardships" required by *Sandin* to invoke any liberty interest entitled to procedural protections.  The sanction of thirty days in isolation and its resulting limitations, without more, does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Sandin*, 515 U.S. at 486; *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (concluding that seven months of disciplinary confinement "does not, on its own, violate a protected liberty interest"); *Anderson v. Oahu Cmty. Corr. Ctr.*, Civ. No. 18-00260 DKW-KSC, 2018 WL 3430674, at *3 (D. Haw. July 16, 2018) ("District courts within the Ninth Circuit have held that segregation from forty days to two-and-a-half years in duration, in itself, does not impose an atypical and significant hardship giving rise to a protected liberty interest.").

Phanpradith also notes that he was transferred from the KCF to the HCF. ECF No. 7 at 7.  Prisoners, however, have no constitutional right to incarceration in a particular institution.  *Olim v. Wakinekona*, 461 U.S. 238, 244–48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976).  Indeed, a prisoner's liberty interests are sufficiently extinguished by his conviction such that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution.  *Rizzo v. Dawson*,

778 F.2d 527, 530 (9th Cir.1985) (citing *Meachum*, 427 U.S. at 224–25) (intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244–48 (interstate prison transfer does not implicate Due Process Clause).

Phanpradith's due process claim in Count II is DISMISSED.[4]

## IV.  CONCLUSION

(1)  Phanpradith's claims for money damages against Defendants in their official capacities are DISMISSED with prejudice.

(2)  Phanpradith's First Amendment retaliation claim against Loredo shall be served and requires a response after service is perfected.

(3)  Phanpradith's Fourteenth Amendment due process claim against Keala is DISMISSED without prejudice.

## V.  SERVICE ORDER

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the First Amended Complaint, ECF No. 7, and a completed summons for Defendant Loredo.  The U.S. Marshal shall open a file and retain these documents for use in the event that Loredo declines to waive service of the summons.

---

[4] This dismissal does not foreclose Phanpradith from later filing an amended pleading that cures the deficiencies in Count II against Keala, subject to the requirements of Fed. R. Civ. P. 15 and orders of this Court.

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.:  (a) a copy of the First Amended Complaint, ECF No. 7, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form addressed to Loredo; and (b) two completed Waiver of Service of Summons forms for Loredo.

(3)  Defendant Loredo shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Loredo fails to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Loredo.  A personally served Defendant will be required to pay the costs of service.

(4)  Defendant Loredo shall file a response to the First Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5)  Phanpradith shall notify the court within one week of any change of address.  This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendant Loredo has filed a response to the First Amended Complaint, Phanpradith's documents are deemed served on any Defendant or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 19, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CHRISTOPHER ADAM PHANPRADITH VS. ERIN LOREDO, ET AL.; CV 21-00293 LEK-RT; ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE**